MGD

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gary Jerome Harper,<br><br>    Plaintiff,<br><br>v.<br><br>Unknown Party, et al,<br><br>    Defendants. | No.  CV 15-08212-PCT-DGC (DKD)<br>     CV 15-08213-PCT-DGC (DKD)<br>     CV 15-08217-PCT-DGC (DKD)<br>     CV 15-08219-PCT-DGC (DKD)<br>     CV 15-08255-PCT-DGC (DKD)<br>     CV 16-08013-PCT-DGC (DKD)<br><br>**ORDER** |

Plaintiff Gary Jerome Harper, who is currently confined in the Arizona State Prison Complex-Florence, brought this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 11.) Defendant Klimach moves for summary judgment (Doc. 46), and Plaintiff opposes (Docs. 57, 58, 59).[1] Also pending are Plaintiff's "Motion to Strike Defendant's Motion for Summary Judg[]ment" (Doc. 53) and Plaintiff's "Motion to Dismiss Defendant's Summary Judg[]ment or Grant Plaintiff Continuance" (Doc. 54).

The Court will deny Plaintiff's Motions, grant Defendant's Motion, and terminate this action.

---

[1] The Court provided notice to Plaintiff pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc), regarding the requirements of a response. (Doc. 49.)

## I. Background

In his First Amended Complaint in case CV 15-08212-PCT-DGC (DKD), Plaintiff alleged that Dr. Klimach denied medications that had been prescribed for him by outside doctors prior to his arrival at the Mohave County Jail, including Nitropan, Flomax, Baclofen, Phenergan, Ensure, steroids, and Tylenol 3. (Doc. 11 at 3.) Plaintiff stated that without those medications, he throws up every day, is in constant pain, and his bones and joints constantly hurt due to his past chemotherapy and radiation treatment. (*Id.*) Plaintiff seeks damages. (*Id.* at 4.) On screening under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated an Eighth and Fourteenth Amendment claim regarding his medical care while he was incarcerated in the Mohave County Jail and directed Dr. Waldemar Klimach to answer.[2] (Doc. 12.)

In a subsequent Order, the Court granted Defendant's Motion to Consolidate case CV 15-08212-PCT-DGC (DKD) with five other cases filed by Plaintiff against him, which the Court had previously screened and ordered Defendant to answer. (Doc. 21.) Plaintiff's allegations in those five other cases, noted in the case caption above, are as follows:

In CV 15-08213-PCT-DGC (DKD), Plaintiff alleges that Defendant failed to recommend Augmentation Cystoplasty surgery for Plaintiff, when that surgery would end the need for Plaintiff to use catheters to urinate. (Doc. 8 at 3.) Plaintiff alleges that Defendant told Plaintiff he can get the surgery when he gets to prison and that Defendant denied his request for pain medication, informing Plaintiff "no pain meds for prisoners." (*Id.*) As relief, Plaintiff seeks surgery and damages. (*Id.* at 4.)

In CV 15-08217-PCT-DGC (DKD), Plaintiff alleges that Defendant refused to prescribe antibiotics and painkillers for an e-coli virus, which left Plaintiff in excruciating pain. (Doc. 9 at 3.) Plaintiff avers that after 33 days of pain, a different doctor ordered a

---

[2] Plaintiff spelled Defendant's name as "Klinemach" in his First Amended Complaint, but the Court directed the Clerk of the Court to correct Defendant's name to "Klimach." (Doc. 45.)

1 ten-day "treatment," which Defendant stopped after five days, and which caused Plaintiff's pain and infection to get worse. (*Id*.) Plaintiff requests damages and injunctive relief to see if the "virus/bacteria" caused long-term effects. (*Id*. at 4.)

In CV 15-08219-PCT-DGC (DKD), Plaintiff alleges that Defendant refused to provide an extension tube for his catheter, which led to bleeding and infection and a green discharge from his penis. (Doc. 9 at 3.) Plaintiff further alleges that Defendant refused to provide any treatment, antibiotics, or pain medication. (*Id*.) Plaintiff seeks damages. (*Id*. at 4.)

In CV 15-08255-PCT-DGC (DKD), Plaintiff alleges that while changing his catheter, Defendant poked Plaintiff's urethra, causing unbearable pain. (Doc. 7 at 3.) Defendant had to get another catheter from an outside hospital, but he refused to prescribe pain medication to Plaintiff in the meantime, which led to Plaintiff suffering in pain for 2.5 hours. (*Id*.) Plaintiff seeks damages. (*Id*.)

In CV 16-08013-PCT-DGC (DKD), Plaintiff alleges that a dentist prescribed a 14-day regimen of antibiotics for an infected tooth before the tooth could be pulled, but, after two days, Defendant took Plaintiff off the antibiotics and pain medications prescribed by the dentist, which left Plaintiff in pain. (Doc. 1 at 3.) Plaintiff avers that his tooth has still not been pulled. Plaintiff seeks damages. (*Id*. at 4.)

## II. Plaintiff's Motions

### A. Motion to Strike

In his Motion to Strike Defendant's Motion for Summary Judgment, Plaintiff asserts that Defendant's Motion is insufficient and redundant because there is no argument that Plaintiff had a serious medical need and Plaintiff neither manufactured his symptoms nor exaggerated their severity. (Doc. 53 at 1.) Defendant responds that his Motion for Summary Judgment complies with the Court's scheduling order, is fully supported by a Separate Statement of Facts and his Declaration, and complies in all respects with Federal Rule of Civil Procedure 56. (Doc. 55 at 1.) Defendant argues that Plaintiff's Motion does not seek to strike his Motion for Summary Judgment on technical

1  grounds but rather because Plaintiff disagrees with its contents, which is not a legal basis
2  for the Motion to Strike. (*Id.*)

3  The Court agrees that Plaintiff has not presented a legal basis to strike Defendant's
4  Motion for Summary Judgment. The Court will deny Plaintiff's Motion to Strike.

### B. Motion to Dismiss

In his Motion to Dismiss Defendant's Summary Judgment or Grant Plaintiff Continuance, filed on November 17, 2016, Plaintiff asserts that he cannot properly defend against summary judgment without the documents he requested from Defendant but which Defendant has not provided. (Doc. 54 at 1.) If the Court does not grant his Motion to Dismiss, Plaintiff requests a 60-day continuance to get the necessary documents in order to properly respond to Defendant's Motion for Summary Judgment. (*Id.* at 1-2.) Plaintiff also asserts that Defendant has not complied with this Court's October 27, 2016 Order to provided addresses for Samantha Ramsey and Julie Collins. (*Id.* at 2.) Plaintiff says he needs their testimony to defend against summary judgment. (*Id.*) Plaintiff also asks the Court, pursuant to Federal Rule of Civil Procedure 56(d), for an Order directing the Mohave County Jail to have six people provide declarations to Plaintiff and to allow Plaintiff to interview those individuals. (*Id.*)

Defendant responded on December 9, 2016 that he did provide addresses for the two witnesses to the Court under seal on November 10, 2016, but those addresses had not yet been provided to Plaintiff because the Court had not decided whether those depositions should proceed. (Doc. 60 at 2 n.1.) Defendant further responds that he does not have custody and control of Plaintiff's medical records, but that he provided Plaintiff with the records he was able to obtain. (*Id.*) Defendant also argues that a party seeking a continuance to respond to a motion for summary judgment under Rule 56(d) must establish that such information is essential to resist the summary judgment motion, but that Plaintiff had not established that the discovery he seeks will enable him to resist Defendant's summary judgment motion. (*Id.* at 1.) Plaintiff did not file a reply.

- 4 -

In a February 10, 2017 Order, the Magistrate Judge denied Plaintiff's request for a continuance to obtain documents, observing that Plaintiff had already filed his Response to Defendant's Motion for Summary Judgment. (Doc. 68 at 3.) Therefore, the Court does not need to address this portion of Plaintiff's Motion.

In that same Order, the Magistrate Judge granted Plaintiff's "Motion for Deposition to Perpetuate Testimony" of Ramsey and Collins, noting that Defendant had complied with the Court's previous Order to file under seal the last known addresses of Ramsey and Collins. (Doc. 58 at 4.) The Magistrate Judge directed the Clerk of the Court to issue and forward two subpoenas and two U.S. Marshal forms to Plaintiff and further ordered the U.S. Marshal to promptly effect service of Plaintiff's subpoenas once the Clerk received the properly completed forms and subpoenas and Plaintiff tendered the witness fees and costs for each witness pursuant to 28 U.S.C. § 1821. (*Id.*) According to the docket in this case, Plaintiff did return the subpoenas and forms on February 21, 2017, but the subpoenas were returned to Plaintiff because they were incomplete and because the required witness fees and costs were not enclosed. The docket shows no action by Plaintiff in response. Because the Magistrate Judge granted his Motion for Deposition to Perpetuate Testimony and Plaintiff has not pursued the depositions, this portion of his Motion to Dismiss Defendant's Summary Judgment is moot.

The remaining issue is Plaintiff's request to interview and obtain declarations from six individuals. Under Federal Rule of Civil Procedure 56(d), a court may defer considering a motion for summary judgment, deny it, or allow more time for discovery if the party opposing summary judgment "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Plaintiff has not made this showing or given any reason for interviewing or obtaining declarations from the six people he identified in his Motion. The Court also notes that Plaintiff was given until September 8, 2016, to complete fact discovery (Doc. 21), and does not claim that this time was insufficient.

For the above reasons, Plaintiff's Motion to Dismiss Defendant's Summary Judgment or Grant Plaintiff Continuance will be denied.

**III. Summary Judgment**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only

the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

**IV.     Facts**

When Plaintiff was admitted to the Mohave County Jail in September 2015, he told the medical staff he had a history of Hodgkins Lymphoma and a 15 year history of idiopathic neurogenic bladder, which requires the use of a catheter to urinate. (Doc. 47 (Def.'s Statement of Facts) ¶ 2; Doc. 61 (Pl.'s Statement of Facts) ¶ 3.) Plaintiff had self-catheterized prior to his arrest, but, when he arrived at the jail on September 8, 2015, he was not using a catheter. (Doc. 47 ¶¶ 3, 6.) On September 12, 2015, Defendant, who is a board-certified urologist, placed a Foley catheter in Plaintiff's bladder because Plaintiff complained of difficulty voiding.[3] (*Id*. ¶¶ 7, 30.)

Plaintiff asserts that Defendant refused to prescribe medications that Plaintiff was taking prior to his arrest even though Defendant "was aware of Carson Urologists medical records." (Doc. 61 at 2 ¶ 6, citing Ex. 9 at 1.)[4] According to Defendant, Plaintiff "continually sought out pain medications while under [Defendant's] care," and Plaintiff's "potential for abusing pain killers was always an issue." (Doc. 47 ¶¶ 10, 12.) Defendant asserts that Plaintiff underwent detoxification after an earlier admission to the jail. (*Id*. ¶ 11.) Defendant cites to a March 24, 2015 "Practitioner's Orders for Opioid Medical

---

[3] Defendant explains that a Foley catheter is an "in-dwelling" catheter, which is a catheter that remains in place and is changed by medical personnel on a schedule set by the attending physician. (Doc. 47 ¶ 7.)

[4] Plaintiff does not specify what medications he was taking prior to his arrest, and Page 1 of Plaintiff's Exhibit 9, which contains medical notes from Defendant's October 2, 2015 encounter with Plaintiff, does not include any reference to medications Plaintiff had taken previously, but does say that Plaintiff wanted Ensure nutritional supplements. (Doc. 61-4 at 30.) Plaintiff did submit many pages of records from Carson Urologists, Ltd., in Carson City, Nevada, ranging in dates from January 2011 (Doc. 61-1 at 7) to November 1, 2013 (*id*. at 32)—almost two years before Plaintiff entered the Mohave County Jail in September 2015. The November 1, 2013 report indicates that Plaintiff was taking Ditropan 10 mg, Zantac 25 mg, Bactrim 400 mg, and Oxycodone 5 mg at that time. (*Id*.)

Withdrawal" indicating a diagnosis of opioid dependency for Oxycodone and prescribing Clonidine for opioid withdrawal, as well as Vistaril and Tylenol. (Doc. 47-1 at 16.)

Plaintiff contends that one cannot abuse "these medications" because nurses distribute medications at specific times, a guard checks the inmate's mouth, and because "all pain killers are diluted in water." (Doc. 61 at 2 ¶ 8.) Plaintiff asserts that he continuously informed Defendant that his bones and joints hurt and he was in constant pain, "only to have him refuse me these medications." (*Id*. at 2 ¶ 10, citing Exhibit 11 at 13.)[5] When Plaintiff arrived at the jail on September 8, 2015, he was prescribed Baclofen—a muscle relaxant given to cancer patients for bone and joint pain—for 90 days, but Defendant discontinued it. (*Id*. at 3 ¶ 13; Doc. 47 ¶ 14.) Plaintiff's medical records indicate the Baclofen was discontinued on September 21, 2015. (Doc. 61-4 at 59.)

Defendant asserts that Baclofen "is often abused in jails" and there was no medical reason to prescribe Baclofen to Plaintiff, but that he needed to ween Plaintiff from the drug before discontinuing it. (Doc. 47 ¶¶ 14-15.) When Plaintiff learned he would not be given Baclofen, he refused to take his other medications. (*Id*. ¶ 16.) Plaintiff later requested Phenergan, which Defendant had prescribed, and he was given 25 mg of Phenergan for complaints of nausea. (*Id*.; Doc. 47-1 at 59.) Defendant prescribed a limited amount of Phenergan to Plaintiff for nausea, but Defendant says that because Phenergan also acts as a sedative, it is rarely re-prescribed. (Doc. 47 ¶¶ 17-18.) In Defendant's opinion, Phenergan should be used sparingly because it has a history of being a drug of abuse. (*Id*. ¶ 19.)

Defendant prescribed Oxybutynin for Plaintiff, which is used for an over-active bladder, but in Defendant's opinion no further drugs were required for Plaintiff's bladder

---

[5] Plaintiff's Exhibit 11 is a medical record for September 22, 2015, indicating that Plaintiff was seen for follow-up care for his in-dwelling Foley catheter and that Plaintiff was requesting "T#3" (presumably Tylenol #3) and a double dose of Ensure, which were denied. (Doc. 61-4 at 42.) The notes state that Plaintiff did not appear to be in pain and his urinary diversion system was working well. (*Id*.)

issues. (Doc. 47 ¶¶ 20-21.) Defendant also prescribed Tylenol 3 for Plaintiff intermittently and for short periods of time. (*Id*. ¶ 22.) Defendant asserts that because Tylenol 3 contains codeine, it is addictive and can be abused. (*Id*. ¶ 22.)

As for antibiotics, Defendant asserts that urologists are very cautious in prescribing them to catheterized patients because such patients need to maintain the bacteria that are present in their bladders to maintain a healthy urinary tract. (Doc. 47 ¶¶ 32, 34.) Antibiotics can destroy these bacteria, leading to urinary tract infections that are very difficult to cure and may cause resistance to antibiotics. (*Id*. ¶ 33.) 100% of patients with in-dwelling catheters will colonize bacteria in their bladders, including e-coli, but the bacteria will not cause harm unless the drainage of the bladder is compromised such as by a kinked or blocked catheter. (*Id*. ¶ 35.) A compromised bladder can cause infection to the kidneys. (*Id*.) Defendant explained this to Plaintiff, and, although Plaintiff did have e-coli bacteria present in his urine samples while Defendant was treating him, Defendant told Plaintiff it is best not to treat these colonized bacteria with antibiotics because there is a risk the bacteria will become resistant to all antibiotics, leading to the risk of infection to the kidneys. (*Id*. ¶ 36.)

Plaintiff responds that Defendant was aware of Plaintiff's abnormal e-coli levels and knew that Carson Urologists placed Plaintiff on antibiotics for urinary tract infections, but Defendant failed to treat Plaintiff's infection with antibiotics. (Doc. 61 at 5 ¶¶ 28-30, citing, in part, Ex. 4 at 1-74.)[6]

Defendant asserts that the decision to stop the antibiotics prescribed by a dentist was to avoid development of resistant urine bacteria by overuse of antibiotics, and that

---

[6] As noted, Plaintiff's Exhibit 4 contains records from Carson Urologists, Ltd., from 2011, 2012, and 2013. (*See* Doc. 61 at 31–50, Doc. 61-1 at 1–55.) In one of the more recent records, dated November 1, 2013, Dr. Roland N. Chen noted under "Urinary tract infection" that Plaintiff "has been treated with numerous courses of oral and IV abx [antibiotics] with no relief in terms of his bladder spasms. He has had fairly resistant organisms growing in his urine. I recommended to him that he be taken off all [antibiotics] at this point. All we are accomplishing . . . is creating multiple drug resistant organisms in his urine and GI tract." (Doc. 61 at 36-37.)

the decision was made in consultation with a dentist, Dr. Tori Sandoval. (Doc. 47 ¶ 43.) Although Defendant was concerned about allowing Plaintiff to have an opiate, he did agree to allow Plaintiff to use Tylenol 3 until the extractions were performed. (*Id.* ¶ 44.) Plaintiff's dental records indicate he had two teeth extracted on February 10, 2016. (Doc. 61-4 at 75.)

Regarding Plaintiff's claim that Defendant denied him Augmentation Cystoplasty surgery ("AC surgery"), Defendant asserts that Plaintiff never sought AC surgery until Defendant told him he might be a candidate for such surgery and should look into it after his release.[7] (Doc. 47 ¶ 27.) In Defendant's opinion, AC surgery was not necessary at that time because catheterization, which Plaintiff had been using in the years prior to his arrest, was performing as required. (*Id.* ¶ 28.)

As to Plaintiff's claim that Defendant refused to provide an extension tube to his catheter, resulting in an infection and green discharge from his penis, Defendant asserts there are no notes regarding a request for an extension tube, that urine test results did not show an increase in bacteria, and that Plaintiff had no objective indication of infection such as elevated temperature. (Doc. 47 ¶¶ 37-38.) Defendant also contends there is nothing in the medical notes that supports Plaintiff's claim that Defendant refused to prescribe him pain medication when Defendant needed to obtain a catheter from outside the jail. (*Id.* ¶¶ 39-40.) Defendant asserts that Plaintiff's medication records show that between Plaintiff's admission to the jail and the date of his complaint, Plaintiff was prescribed pain medications such as Motrin, Ibuprofen, and Acetaminophen, "which are not considered drugs of abuse." (*Id.* ¶ 41.)

///

///

---

[7] Defendant explains that AC surgery is a rare procedure used in adults who lack adequate bladder capacity and is a last resort for patients unable to use more conservative methods such as a catheter. (Doc. 47 ¶¶ 24-25.) Defendant further explains that the results of AC surgery are often not permanent and the patient may need to return to self-catheterization at some point after the surgery. (*Id.* ¶ 26.)

## V. Discussion

### A. Legal Standard

Because Plaintiff was a pretrial detainee at the relevant time, his claim arises under the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment's Cruel and Unusual Punishment Clause; however, the Eighth Amendment's deliberate indifference standard still applies to his medical care claim. *See Carnell v. Grimm*, 74 F.3d 977, 979 (9th Cir. 1996) (deliberate indifference standard applicable to pretrial detainees' medical claims). Under this standard, a prisoner must demonstrate "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). There are two prongs to the deliberate-indifference analysis: an objective standard and a subjective standard.

First, a prisoner must show a "serious medical need." *Jett*, 439 F.3d at 1096 (citations omitted). A "'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds, WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal citation omitted). Examples of indications that a prisoner has a serious medical need include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *McGuckin*, 974 F.2d at 1059-60.

Second, a prisoner must show that the defendant's response to that need was deliberately indifferent. *Jett*, 439 F.3d at 1096. The state of mind required for deliberate indifference is subjective recklessness, but "the standard is 'less stringent in cases involving a prisoner's medical needs . . . because the State's responsibility to provide inmates with medical care ordinarily does not conflict with competing administrative concerns.'" *McGuckin*, 974 F.2d at 1060 (quotation omitted). Whether a defendant had requisite knowledge of a substantial risk of harm is a question of fact, and a fact finder

may conclude that a defendant knew of a substantial risk based on the fact that the risk was obvious. *Farmer v. Brennan*, 511 U.S. 825, 842 (1994). While the obviousness of the risk is not conclusive, a defendant cannot escape liability if the evidence shows that the defendant merely refused to verify underlying facts or declined to confirm inferences that he strongly suspected to be true. *Id.*

"Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (internal citations and quotation marks omitted). Deliberate indifference may also be shown by the way in which prison officials provide medical care, *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988), or "by circumstantial evidence when the facts are sufficient to demonstrate that a defendant actually knew of a risk of harm." *Lolli v. Cnty. of Orange*, 351 F.3d 410, 421 (9th Cir. 2003). Deliberate indifference may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need. *Jett*, 439 F.3d at 1096. But the deliberate-indifference doctrine is limited. An inadvertent failure to provide adequate medical care or negligence in diagnosing or treating a medical condition does not support an Eighth Amendment claim. *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (citations omitted). Further, a mere difference in medical opinion does not establish deliberate indifference. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

Finally, even if deliberate indifference is shown, to support an Eighth Amendment claim, the prisoner must demonstrate harm caused by the indifference. *Jett*, 439 F.3d at 1096; *see Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989) (delay in providing medical treatment does not constitute Eighth Amendment violation unless delay was harmful).

**B.    Analysis**

    **1.    Serious Medical Need**

A review of Plaintiff's available medical records shows that Plaintiff had a history of Hodgkins Lymphoma with chemotherapy and radiation treatment, a history of

1  idiopathic neurogenic bladder, which requires the use of a catheter, and a history of
2  infections and pain complaints. A number of practitioners considered Plaintiff's
3  conditions "important and worthy of treatment," thereby satisfying the objective prong of
4  the deliberate indifference analysis. *McGuckin*, 974 F.2d at 1059-60.

### 2. Deliberate Indifference

Defendant argues that he did not ignore Plaintiff's complaints and tried to ensure that Plaintiff had the proper medication and his pain was controlled at all times. (Doc. 46 at 7.) He argues there is no evidence that he chose a medically unacceptable course of treatment or acted in conscious disregard of an excessive risk to Plaintiff's health. (*Id*.) Rather, Defendant asserts that he tried to balance Plaintiff's need for pain medication against his history of drug abuse, and that Plaintiff had access to pain medication at all times, just not the pain medication Plaintiff wanted. (*Id*.) Defendant further contends there is no evidence that AC surgery was indicated and necessary or that the failure to provide the surgery resulted in a risk of further significant injury. (*Id*. at 7-8.)

Plaintiff responds that he disputes all facts set forth in Defendant's Statement of Facts and that his response is based on limited discovery.[8] (Doc. 57 at 1.) Plaintiff takes issue with Defendant basing his actions on his "medical opinion," and asserts that he can prove Defendant "lied through counsel and [he] can prove a 30 year pattern." (*Id*. at 2.)

Although the Court informed Plaintiff of the requirements of his response to Defendant's Motion, Plaintiff's Statement of Facts does not correspond to Defendant's Statement of Facts, does not set forth which of Defendant's facts Plaintiff actually disputes, and does not cite to the specific portion of the record supporting his position. Simply stating in his response that he disputes all of Defendant's fact is insufficient. Nevertheless, the Court has reviewed Plaintiff's Response, Statement of Facts, and evidence to determine whether a genuine issue of material fact exists.

---

[8] Plaintiff filed three Responses to Defendant's Motion, all of them saying the same thing. (*See* Docs. 57-59.) Therefore, the Court will only refer to Plaintiff's arguments in his first Response.

The evidence does not support a finding that Defendant was deliberately indifferent to Plaintiff's serious medical needs. Defendant has offered evidence—including his sworn declaration and pertinent portions of Plaintiff's medical records—supporting a finding that he did not disregard a serious medical need.

Although Plaintiff claims that Defendant denied medications that had been prescribed by outside doctors prior to his arrival at the jail, including Nitropan, Flomax, Baclofen, Phenergan, Ensure, steroids, and Tylenol 3, the record evidence does not show that Plaintiff was taking all of these medications when he arrived at the jail or what exactly he was taking. Most of the hundreds of pages of medical records provided by Plaintiff, aside from the records at the jail, are from 2011, 2012, and 2013, while Plaintiff arrived at the jail in September 2015. Plaintiff has not rebutted Defendant's evidence that weening Plaintiff from Baclofen, prescribing Phenergan on a limited basis for nausea, and treating Plaintiff's bladder issues with Oxybutinin was inappropriate.

Nor does Plaintiff dispute that he was treated for opioid dependency approximately five months before he re-entered the jail in September 2015, or present evidence that Defendant's treatment of his pain complaints with Motrin, Ibuprofen, and Acetaminophen, and limited prescriptions of Tylenol 3, was inappropriate. As for the one occasion Plaintiff claims Defendant left him in pain for 2.5 hours while Defendant obtained a catheter from a hospital, Plaintiff provides no evidence as to when this occurred or what he told Defendant, if anything, about his pain. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) ("[c]onclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment"); *Nilsson v. City of Mesa*, 503 F.3d 947, 952 n.2 (9th Cir. 2007) ("a conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact").

Although Plaintiff cites to lab reports showing the presence of e-coli in his urine, Plaintiff has not rebutted Defendant's evidence that use of antibiotics was not indicated

for Plaintiff's condition. Nor has Plaintiff rebutted Defendant's evidence that Defendant consulted with the dentist before discontinuing the antibiotics prescribed by the dentist or Defendant's reasons for discontinuing the antibiotics.

As to Plaintiff's claim that Defendant refused to provide an extension tube for his catheter, which led to bleeding, infection, and a green discharge from his penis, Defendant asserts that there are no records regarding a request for an extension tube and Plaintiff does not present any evidence of when he made this request. Plaintiff has not rebutted Defendant's evidence that urine test results showed no increase in bacteria or that Plaintiff showed no objective indication of an infection, such as elevated temperature. (Doc. 47 ¶¶ 37-38.) And, although Plaintiff's medical records do indicate that Plaintiff had a green discharge at one point, the record does not say the discharge was caused by the lack of an extension tube. (*See, e.g.*, Doc. 61 at 26.)

Finally, Plaintiff does not present any evidence showing that AC surgery was necessary for his condition or that Defendant's failure to recommend that surgery amounted to deliberate indifference.

The evidence shows that Defendant responded to Plaintiff's complaints and recommended various courses of treatment depending on the situation. Although Plaintiff disagrees with Defendant's treatment choices, Plaintiff produces no evidence that Defendant's treatment choices were the product of deliberate indifference to his serious medical needs. Accordingly, the Court will grant Defendant's Motion for Summary Judgment.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Defendants' Motion for Summary Judgment (Doc. 46), Plaintiff's Motion to Strike Defendant's Motion for Summary Judgment (Doc. 53), and Plaintiff's Motion to Dismiss Defendant's Summary Judgment or Grant Plaintiff Continuance (Doc. 54).

(2) Plaintiff's Motion to Strike Defendant's Motion for Summary Judgment (Doc. 53) and Plaintiff's Motion to Dismiss Defendant's Summary Judgment or Grant Plaintiff Continuance (Doc. 54) are **denied**.

(3) Defendants' Motion for Summary Judgment (Doc. 46) is **granted**, and the action is **terminated with prejudice**. The Clerk of Court must enter judgment accordingly.

Dated this 3rd day of July, 2017.

_____
David G. Campbell
United States District Judge